Fran NORTON *v.* STATE of Arkansas

CR 91-198                                                      820 S.W.2d 272

Supreme Court of Arkansas
Opinion delivered November 25, 1991
[Rehearing denied January 21, 1992.]

*Christopher Carter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Fran Norton, was convicted of cruelty to animals. She contends the evidence was insufficient, some of the evidence should have been suppressed due to violation of the Fourth Amendment and Ark. R. Crim. P. 15.4, and in any event, she should not have been convicted on more than one count as she was charged with only one count. We hold the evidence was sufficient, there was no violation of the Fourth Amendment, and Ms. Norton was properly charged and convicted of two counts of the offense. The conviction is affirmed.

The conviction resulted from activities of Ms. Elaine Occhipinti, who described herself as a "field officer" of the North Central Arkansas Humane Society. Ms. Occhipinti had visited the Norton premises and observed malnourished and poorly maintained animals. She attempted unsuccessfully to work with Ms. Norton to solve the problem.

Ms. Occhipinti ultimately complained to the prosecutor, and an arrest warrant for Ms. Norton issued. Baxter County Sheriff's Officer Clippinger was sent to Ms. Norton's residence to make the arrest. Ms. Occhipinti and two other members of the Humane

Society arrived at the property at approximately the same time as Officer Clippinger. At Ms. Norton's request the Humane Society personnel were asked by Officer Clippinger to leave the property and did so.

Immediately after Ms. Norton was removed by Officer Clippinger, Ms. Occhipinti and company called in a veterinarian and entered the property. They seized a number of rabbits and goats they determined to need immediate care.

Ms. Norton was convicted in Municipal Court of cruelty to animals. She appealed to the Circuit Court where she moved to suppress evidence resulting from the "search" of her property, including photographs which were taken and the testimony of the veterinarian concerning the condition of the animals seized. Her suppression motions were denied on the ground that no constitutionally prohibited search had occurred, and the de novo trial resulted in conviction.

## 1. Sufficiency of the evidence

The test for sufficiency of the evidence is that it must be of such force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force the mind to go beyond speculation or conjecture and is not satisfied by evidence which gives equal support to inconsistent inferences. This court views the evidence in the light most favorable to the appellee, and we look only to the evidence which supports the verdict. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988).

Ms. Norton refers us to her testimony that she loved her animals, that she knew their personalities, and that the veterinarian testified she had sought help by asking for medications when the animals were ill. She also points to the testimony of the veterinarian that not all the animals were in critical condition.

Arkansas Code Ann. § 5-62-101 (1987) provides:

Cruelty to animals.

(a) A person commits the offense of cruelty to animals if, except as authorized by law, he knowingly:

***

(3)   Subjects any animals in his custody to cruel neglect. . . .

***

Prosecution witnesses testified that the goats were in such discomfort from long hooves that many were walking on their knees. Photographs introduced in evidence make this condition obvious, and the veterinarian's testimony established that walking on the knees also caused pain to the animals. His testimony also established that the rabbits found alive in cages were in discomfort. Cruel neglect is obviously displayed in the photographs of the hooves and distended udders of the goats found on the property. Photographs showed many dead rabbits.

Ms. Norton contends she should not have been found guilty of a "knowing" offense because the condition of the animals was the result of her financial inability to care for them. The definition of "knowingly" is found in Ark. Code Ann. § 5-2-202(2) (1987):

> A person acts knowingly with respect to his conduct or the attendent circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

The evidence was sufficient to show Ms. Norton must have been aware that she allowed the animals to reach a deplorable condition.

## 2. Suppression

Ms. Norton argues the evidence and testimony should have been suppressed because Ark. Code Ann. § 5-62-112 (1987) authorizes humane society personnel to initiate the issuance of search warrants, and thus Ms. Occhipinti's failure to obtain one makes the search illegal. She also argues a violation of Rule 15.4 in that the items seized were not listed by the "officer" conducting the search and given to her and to the Court.

Both arguments hinge on whether Ms. Occhipinti and those who accompanied her to Ms. Norton's property were officers or agents of the State. The Fourth Amendment's prohibi-

tion against unreasonable searches and seizures is inapplicable to searches conducted by private citizens, *Winters* v. *State*, 301 Ark. 127, 782 S.W.2d 566 (1990), and Rule 15.4, by its terms, applies only to an "officer" making a seizure. The Trial Court found that no officer of the law conducted any search and, therefore, no search warrant was required, a conclusion with which we agree.

■ Ms. Norton's argument is that Ark. Code Ann. § 5-62-113 (1987) authorized Ms. Occhipinti to make arrests, Ark. Code Ann. § 5-62-112 (1987) authorizes one who has the power to arrest to conduct a search, and thus Ms. Occhipinti was a State officer when she searched the Norton property, photographed it, and seized the distressed animals.

Arkansas Code Ann. § 5-62-113 (1987) authorizes an agent of any "society . . . incorporated for the prevention of cruelty to animals, upon being appointed by the president of the society" to make arrests of persons violating the cruelty law. There is no evidence that Ms. Occhipinti, or any of the persons who accompanied her to Ms. Norton's property, had received an appointment from the president of the North Central Arkansas Humane Society, or any other such groups to make arrests. There is thus no showing that they could have obtained a search warrant as "officers."

■ Ordinarily the State is in the posture of having to prove a warrantless intrusion was not in violation of the Fourth Amendment, *Dominguez* v. *State*, 290 Ark. 428, 720 S.W.2d 703(1986); however, the initial burden of showing one's constitutional rights were invaded is on the party challenging the search. *Pritchard* v. *State*, 258 Ark. 151, 523 S.W.2d 194 (1975). Before Ms. Norton could assert state action in violation of her Fourth Amendment right, it was her burden to establish a state officer, as opposed to a private citizen, conducted the search.

Her inability to show that Ms. Occhipinti was a state officer is also fatal to her claim of violation of Rule 15.4.

### 3. Conviction on two counts

■ Ms. Norton argues the Trial Court erred by convicting her of two counts of cruelty to animals although she was charged with only one count in the Municipal Court and appealed only one

count to the Circuit Court. The docket sheet from the Municipal Court shows Ms. Norton was charged with two counts, apparently one count was for the rabbits and one was for the goats. It states a trial was held and she was convicted. Her notice of appeal to the Circuit Court simply appealed the conviction without specifying further. We note that Ark. Code Ann. § 5-62-101(a)(3) (1987) provides that one may be found guilty of cruelty to animals if one "[s]ubjects any animals in this custody to cruel neglect. . . ."

We have no doubt that two counts were charged and that at least that many were justified.

Affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. I dissent.

The majority relies on Ark. Code Ann. § 5-62-112 (1987) to make a finding that there was no evidence that Ms. Occhipinti, or any of the persons who accompanied her to Ms. Norton's property, *had received an appointment from the President of the North Central Arkansas Humane Society or any other such group to make arrests*. The majority determines that before Ms. Norton could assert state action in violation of her Fourth Amendment right, it was her burden to establish that a state officer, as opposed to a private citizen, conducted the search.

The facts of this case should leave one with the sole conclusion that Ms. Occhipinti acted as an official representative of the North Central Arkansas Humane Society, cloaked in the police powers of the state under section 5-62-112 and not as a private citizen. She filed the complaint as Elaine Occhipinti, agent of North Central Arkansas Humane Society. Her testimony was replete with reference to her official capacity, either as a field officer or as an agent of the Society. To me, it is putting form over substance to require the defendant under these facts to prove that Ms. Occhipinti served under "appointment by the President of the Humane Society." Never by her pleadings, acts, representations, deeds, or testimony did she represent herself as acting in other than as an official of the North Central Arkansas

Humane Society. The evidence seized by her and used by the state should have been suppressed.