The STATE of Ohio, Appellant,

v.

JEDD et al., Appellees.

[Cite as *State v. Jedd* (2001), 146 Ohio App.3d 167.]

Court of Appeals of Ohio,
Fourth District, Athens County.

Nos. 01CA5, 01CA6, 01CA7, 01CA8 and 01CA9.

Decided Sept. 14, 2001.

*C. David Warren,* Athens County Prosecuting Attorney, and *Richard Ross,* Assistant Prosecuting Attorney, for appellant.

*William A. Grim,* for appellee John Ketcham.

*William H. Safranek,* for appellees David Jedd, David Parillo, and Jennifer Roe.

*James A. Wallace,* for appellee Robert McAdams.

KLINE, Judge.

The state appeals the decision of the Athens County Court of Common Pleas, which suppressed physical evidence. It argues that the trial court erred because a private party conducted the search at issue. Because we find that there was insufficient state involvement in the search by Federal Express employees to transform the seemingly private search into state action, we agree. Accordingly, we reverse the judgment of the trial court.

I

The state indicted David Jedd, David Parillo, Jennifer Roe, John Ketcham, and Robert McAdams ("the defendants") for various drug offenses. The investigation and search of Ketcham's premises, which yielded physical evidence and incriminating statements against the defendants, was premised upon several Federal Express employees' discovery of psilocybin mushrooms in a package addressed to Ketcham's residence.

Ketcham filed a motion to suppress. At a hearing on Ketcham's motion, Agent Hawks (a member of a special state task force) testified that he contacted Federal Express and asked it to alert him when any suspicious packages addressed to Ketcham came into its office because they suspected drug activity. According to Agent Hawks, Federal Express later attempted to contact him about a suspicious package. They could not reach Agent Hawks and delivered the packaged as addressed. At an even later date, a Federal Express employee reached Agent Hawks and advised him that Federal Express employees had opened a package addressed to Ketcham. Agent Hawks testified that the employee verbally described the package contents, dried mushrooms, to Agent Hawks. Agent Hawks then drove to the Federal Express office and determined that they were psilocybin mushrooms, a controlled substance. He took custody of

the package and performed a controlled delivery to the address on the package. Once the package was delivered to Ketcham's residence, the Athens County Sheriff's Office obtained a warrant to search Ketcham's residence. According to Agent Hawks, the police found illegal drugs at Ketcham's residence.

In its decision on Jedd, Parillo, and Roe's motion to suppress, the trial court focused on the search of the package by Federal Express employees. The trial court seemed to believe Agent Hawks's testimony as described above. The trial court concluded from this testimony that Federal Express was "acting in concert" with the police "rather than independently investigating factual situations which might pose a risk for [its] customers or employees." The trial court further concluded that the search conducted by Federal Express constituted state action that should not have occurred without a warrant. Based on this finding, the trial court granted Jedd's and McAdams's motions to suppress.

The state appeals and asserts the following assignment of error:

"The trial court erred when it found that the action of Federal Express in Parkersburg, [West Virginia] was state action."

II

In its only assignment of error, the state argues that the search conducted by Federal Express was a private search because there was no government involvement in the search. The state argues that in order to show that the private individuals were acting as more than private individuals, the defendants had to show that (1) the state actor "instigated, encouraged or participated" in the search, and (2) the private individual engaged in the search with the intent of assisting the police in their investigation. In doing so, the state relies upon *United States v. Pervaz* (C.A.1, 1997), 118 F.3d 1. The state argues that while Agent Hawks had prior contact with the Parkersburg Federal Express office, he had no part in the search at issue.

Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. We must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. We then apply the factual findings to the law regarding suppression of evidence. Finally, we review the trial court's application of the

law to those facts under the *de novo* standard of review. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.

■ "[T]he Fourth Amendment protection against unlawful searches and seizures applies only to action by government authorities or their agents." *State v. Morris* (1975) 42 Ohio St.2d 307, 316, 71 O.O.2d 294, 329 N.E.2d 85, citing *Burdeau v. McDowell* (1921), 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048. See, also, *United States v. Jacobsen* (1984) 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85, quoting *Walter v. United States* (1980), 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (Blackmun, J., dissenting) (the Fourth Amendment "proscribes only government action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official' ").

■ If a warrantless search is not "an exclusively private undertaking but involves some degree of police participation, then courts must look to the facts surrounding the search in order to determine whether it is an unreasonable police search or an excepted private search." *Morris* at 316, 71 O.O.2d 294, 329 N.E.2d 85. Courts are to focus on the attendant circumstances of the search. *Id.*

■ Normally, once a criminal defendant shows that a warrantless Fourth Amendment search has taken place, the burden of proof is on the prosecution to show that an exception to the warrant requirement exists. See *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraphs one and two of the syllabus. However, when the existence of a Fourth Amendment search is at issue, the defendant first bears the burden of showing that a government search occurred.[1] See, *e.g., United States v. Hershenow* (C.A.1, 1982), 680 F.2d 847 (defendant doctor had burden of proof to show that he had a reasonable expectation of privacy in box before court would find that the government's search through the box was a Fourth Amendment search); *Massachusetts v. D'Onofrio* (1986), 396 Mass. 711, 488 N.E.2d 410 (burden of proof on defendant to show that officer's observation of illegal activity in private club resulted from a "search," *i.e.,* entry contrary to club members expectation of privacy).

■ In a case where the defendant alleges that a government search arose from seemingly private conduct, the existence of a Fourth Amendment search is at issue. Thus, the defendant "has the burden of proof as to whether there was

---

1. We note that when the existence of a Fourth Amendment search is at issue, the state is not required to prove an exception to the warrant requirement to justify a warrantless search because if there is no governmental search, *i.e.,* no state action, the Fourth Amendment does not apply. *Burdeau v. McDowell* (1921), 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048.

sufficient governmental involvement in seemingly private conduct" to classify the search as governmental. 5 LaFave, Search and Seizure (1996) 43–45, Section 11.2(b), citing *United States v. Cleaveland* (C.A.9, 1994) 38 F.3d 1092; *United States v. Feffer* (C.A.7, 1987), 831 F.2d 734; *Norton v. Arkansas* (1991), 307 Ark. 336, 820 S.W.2d 272; *Waters v. Maryland* (1990), 320 Md. 52, 575 A.2d 1244; *Massachusetts v. Storella* (1978), 6 Mass.App.Ct. 310, 375 N.E.2d 348; *South Carolina v. Cohen* (1991), 305 S.C. 432, 409 S.E.2d 383; *Utah v. Watts* (Utah 1988), 750 P.2d 1219. See, also *United States v. Young* (C.A.9, 1998), 153 F.3d 1079, 1080 ("defendant challenging a search conducted by a private party bears the burden of showing the search was governmental action").

The test of government participation is whether, in light of all the circumstances, the private person "acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564, overruled in part on other grounds by *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112. " 'The cases in this area require a great deal of entanglement between the police and the private searcher before agency can be found.' " *State v. Byerly* (Aug. 21, 1998), Portage App. No. 97–P–0034, unreported, 1998 WL 637689, quoting *State v. Glavic* (Mar. 27, 1998), Lake App. No. 96–L–135, unreported, 1998 WL 156860. A request to be on the lookout for suspicious items or behavior is not enough involvement to turn a private search into governmental action. See *United States v. Bazan* (C.A.5, 1986), 807 F.2d 1200, 1203–1204 (neighbor's search of ranch was private search even though federal agents asked neighbor during two prior meetings "to call 'if he saw something strange' "); *United States v. Jennings* (C.A.4, 1981), 653 F.2d 107 (private search even though federal drug agents told airline that certain woman was sending illegal drugs and as a result the agents searched a package shipped by that woman); *People v. McGrew* (1969), 95 Cal.App. 251, 75 Cal.Rptr. 378, 272 P. 791, vacated on other grounds (1969), 1 Cal.3d 404, 82 Cal.Rptr. 473, 462 P.2d 1 (search of footlockers was private search even though police told airline to watch out for footlockers of a particular weight because they might contain marijuana); *State v. Blackshear* (1973), 14 Ore.App. 247, 511 P.2d 1272 (search of luggage was private search even though police alerted airlines that unknown black men were shipping stolen clothing); *State v. Cohen* (1991), 305 S.C. 432, 409 S.E.2d 383 (UPS employee's search of package was private search even though police had requested that UPS notify them if package arrived for defendant). See, generally, 1 LaFave, Search and Seizure (1996), 242–247, Section 1.8(c).

Here, we find that there was not sufficient involvement by the state to transform Federal Express's search into governmental action. Agent Hawks's prior communication with Federal Express employees was limited to a request for them to alert him when any suspicious packages addressed to Ketcham came

into their office.  Agent Hawks did not have any further communication with Federal Express until after the package had been opened.  By the time Agent Hawks had additional contact with Federal Express, the employees had opened the package.  Thus, we find, as a matter of law, that Federal Express's search of the package addressed to Ketcham's residence was a private search.

Accordingly, we sustain the state's only assignment of error and reverse the judgments of the trial court.  We remand these cases to the trial court for proceedings consistent with this opinion.

*Judgments reversed*
*and causes remanded.*

HARSHA and EVANS, JJ., concur.